## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| OSMAN GUNDAS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-1064 (RC) |
| | : | | |
| v. | : | Re Document No.: | 11 |
| | : | | |
| ANTONY J. BLINKEN, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Osman Gundas, a citizen of Turkey, brings this suit to compel Antony Blinken, in his official capacity as Secretary of State, Conor McGuire, in his official capacity as Acting Consular Chief, and other officials (collectively, the "Government")—to adjudicate his visa application, which has now been in administrative processing for approximately eighteen months. Generally speaking, Mr. Gundas alleges that the Government has improperly withheld and unreasonably delayed action on his visa application in violation of the Mandamus Act and the Administrative Procedure Act ("APA"). The Government has moved to dismiss Mr. Gundas's complaint. For the reasons set forth below, the motion to dismiss is granted.

## II. BACKGROUND

### A. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, provides for the temporary admission of nonimmigrant visa applicants into the United States "to perform services . . . in a specialty occupation" through the H-1B visa program. 8 U.S.C. § 1101(a)(15)(H)(i)(b).

The H-1B visa allows these specialized workers to work at a United States company for up to a three-year period with the ability to extend the visa for additional lengths of time.  *See* U.S. Dep't of State, *H-1B Specialty Occupations, DOD Coop. Rsch. and Dev. Project Workers, and Fashion Models*, https://perma.cc/63T8-88PU.  An H-1B visa requires the applicant to complete numerous steps.  *See id*.  Applicants must receive both an approved labor certification and an approved visa petition from their employers and fill out various forms.  *Id*.  The applicant bears the burden of showing that they are eligible for the visa.  8 U.S.C. § 1361.

Typically, an applicant for an H-1B visa must undergo an in-person interview with a consular officer.  *Id*. § 1202(h).  At the end of the interview, State Department regulations require that the consular officer either issue the visa, refuse the visa, or discontinue granting the visa.  22 C.F.R. § 41.121(a); *see Ameer v. Schofer*, No. 23-cv-3066, 2024 WL 2831464, at *4 (D.D.C. June 4, 2024).  "No visa or other documentation shall be issued . . . "if (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  8 U.S.C. § 1201(g).  If the consular officer determines that he needs further information, he may "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA, which typically consists of additional information-gathering.  *See* U.S. Dep't of State, *Admin. Processing Info.*, https://perma.cc/44NK-RVZE; *see* 8 U.S.C. § 1201(g); *Giliana v. Blinken,* 596 F. Supp. 3d 13, 18 (D.D.C. 2022).

**B.  Factual Background**

Plaintiff Osman Gundas is a citizen of Turkey and currently lives in Iraq with his wife

and son.  Am. Compl. ¶¶ 1, 18, ECF No. 10.  In April 2012, Mr. Gundas was issued a B-2 tourist

visa and traveled to the U.S. "for a number of visits in 2012 and again in 2018, none of them

lasting longer than two weeks." *Id*. ¶ 19.  In July 2019, Mr. Gundas's visa was revoked on the

basis that "subsequent to the visa's issuance, information [came] to light indicating that [Mr.

Gundas] may be inadmissible to the United States and therefore ineligible for a visa." *Id*. ¶ 20.

In 2022, Mr. Gundas was sponsored for an H-1 visa to teach science in a school in Ohio. *Id*.

¶ 21.  The visa was approved by U.S. Citizenship and Immigration Services ("USCIS") for a

one-year period from April 2022 to March 2023. *Id*.  After attending an interview at the U.S.

Consulate in Iraq in May 2023, Mr. Gundas was informed that his case was in "administrative

processing." *Id*.  There were no further updates or responses, and the petition eventually expired

in March 2023. *Id*.

Several months later, in May 2023, Mr. Gundas was sponsored for a second H-1 visa by

another school in Florida. *Id*. ¶ 22.  This petition was approved by USCIS, with a validity date

from August 2023 to June 2026. *Id*.  The following month, Mr. Gundas filed a DS-160

application for a non-immigrant visa and his wife and son applied for H-4 visas. *Id*.  H-4 visas

are issued to spouses and children of H-1 visa holders.  U.S. Citizenship & Immigrat. Servs.,

*Employment Authorization for Certain H-4 Dependent Spouses*, USCIS,

https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-

occupations/employment-authorization-for-certain-h-4-dependent-spouses.  In June 2023, Mr.

Gundas and his family were interviewed at the U.S. Consulate in Iraq.  Am. Compl. ¶ 22.  After

the interview, Mr. Gundas was given a written notice stating, "a visa could not be issued because

the case was undergoing further administrative processing." *Id*. ¶ 24.  Mr. Gundas sought

congressional intervention from Florida Senator Marcio Rubio "to obtain a decision, or at least

an explanation for why his case was in administrative processing." *Id*. ¶ 25.  In October 2023, a

consular officer responded to Senator Rubio, stating they could not provide any information

regarding the reason for the administrative processing or when a decision may be issued in Mr.

Gundas's case. *Id*.  However, the consular officer confirmed that Mr. Gundas's application was

"still undergoing administrative processing in order to verify [his] qualifications for this visa."

*Id*.

### C.  Procedural Background

On April 14, 2024, Mr. Gundas filed this suit against the Government, *id*. ¶ 26, claiming

that it has unreasonably delayed action on his visa application under the Mandamus Act and

APA, *id*. ¶¶ 30–46.  Mr. Gundas further requests that the Court order the Government "to

complete their administrative processing and adjudicate [Mr. Gundas's] visa application within

thirty days." *Id*. ¶ 1.  On July 15, 2024, the Government moved to dismiss Mr. Gundas's initial

Complaint.  *See* Defs.' First Mot. to Dismiss and Mem. in Support Thereof, ECF No. 9.  Shortly

after, Mr. Gundas filed an Amended Complaint, *see* Am. Compl., and the Government again

moved to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see*

Defs.' Second Mot. to Dismiss and Mem. in Support Thereof ("Defs.' Mot.") at 1, ECF No. 11.

Mr. Gundas then filed an opposition to the Government's motion.  *See* Pl.'s Mem. of Law in

Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 13.  However, Mr. Gundas soon

moved to file an amended opposition to the Government's motion.  *See* Pl.'s Am. Mem. of Law

in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Am. Opp'n"), ECF No. 14-1.  The Government then

filed a reply in support of its second motion to dismiss and responding to Mr. Gundas's amended opposition.  *See* Reply in Support of Defs.' Mot. to Dismiss ("Defs.' Reply"), ECF No. 15.

### III.  LEGAL STANDARD

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, factual allegations in the complaint "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Ord. of Police v. Ashcroft,* 185 F. Supp. 2d 9, 13–14

(D.D.C. 2001).  Furthermore, "the Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

### B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff.  *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

The Government moves to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6).  Defs.' Mot. at 1.  As to the former, they argue that (1) Mr. Gundas lacks standing to seek judicial review; (2) his claims are precluded by the consular non-reviewability doctrine; and (3) he has not identified a non-discretionary duty that the Government is required to take.  *Id.* at 5–27.  Alternatively, the Government argues that the complaint should be dismissed under Rule 12(b)(6) because Mr. Gundas fails to state a plausible claim of unreasonable delay under the Mandamus Act or APA.  *Id.* at 27–35.  The Court will address these arguments in turn.

### A.  Standing

The Government first argues that Mr. Gundas lacks standing to seek judicial review because he does not satisfy the constitutional requirements for standing, primarily because non-citizens residing abroad have no legally cognizable interest in a visa.  *See id.* at 1–2.  To satisfy the constitutional requirement for standing, Mr. Gundas must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'"  *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).  The Government argues that Mr. Gundas has not met the first and third requirements.  *See* Defs.' Mot. at 6.  The Court disagrees.

First, as to injury, the Government contends that Mr. Gundas's suit is based on procedural harms—alleged delay in adjudicating his visa application and inability to travel to the United States—that are insufficient absent a connection to "a substantive [harm] protected by the common law, a statute, or the Constitution."  *Id.* at 7.  That is because Mr. Gundas is an unadmitted noncitizen who has "no constitutional right to entry."  *Id.* (citing to *Trump v. Hawaii*,

585 U.S. 667, 670 (2018)).  Thus, the Government argues, Mr. Gundas lacks standing to seek

judicial review.  *See* Defs.' Mot. at 6–12.  Courts in this district have consistently rejected this

argument, concluding that a plaintiff suffers an injury in fact when an unreasonable delay in visa

adjudication causes financial or other hardship.  *See Ameer*, 2024 WL 2831464, at *2–3 (finding

that a processing delay on an H-1B visa application resulting in forced unpaid leave and potential

termination constituted an injury in fact); *see also*, *Kahbasi*, 2024 WL 3202222, at *3; *Rashidian*

*v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Ahmadi v.*

*Scharpf*, No. 23-cv-953, 2024 WL 551542, at *3 (D.D.C. Feb. 12, 2024); *Khan v. Blome*, No. 22-

cv-2422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022).  Here, Mr. Gundas has had to

resign from his job in Iraq, risks losing his current job opportunity if the underlying petition

expires, and has spent "time, effort and money" on this visa application.  Am. Compl. ¶¶ 1, 42,

44.  Further, Mr. Gundas and his family have been unable to "make long-term plans in terms of

employment or their child's school."  *Id*. ¶ 42.  These are sufficiently concrete harms to make

this "a real controversy with real impact on real persons."  *TransUnion LLC v. Ramirez,* 594 U.S.

413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 34 (2019)).

    The Government next points to redressability, arguing that they cannot provide the relief

that Mr. Gundas is requesting because "the orders or writs of mandamus that [Mr. Gundas] seeks

from this Court . . . cannot remedy [his] supposed injuries."  Defs.' Mot. at 12 (citing *Marino v.*

*Nat'l Oceanic & Atmospheric Admin*., 33 F.4th 593, 597 (D.C. Cir. 2022)).  "Redressability

examines whether the relief sought, assuming that the court chooses to grant it, will likely

alleviate the particularized injury alleged by the plaintiff."  *Fla. Audubon Soc'y v. Bentsen*, 94

F.3d 658, 663–64 (D.C. Cir. 1996).  As a result, a plaintiff has standing to proceed against a

defendant to the extent that "an order from this Court compelling" the defendant to act on behalf

of the plaintiff's petition would "redress their alleged injur[y]." *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017).

Here, the particularized injury for which Mr. Gundas seeks relief is a delay in adjudicating his visa petition, and "an order directing [the Government] to issue a final decision on his application will redress his injury: his visa application will no longer be pending in administrative processing but instead will be finally decided." Pl.'s Am. Opp'n at 10. Mr. Gundas does not ask the Court to invalidate the consular officer's decision to place his visa application in administrative processing or compel a different outcome through re-adjudication. *See id.* at 8; *see also Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-cv-1388, 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019) ("Plaintiffs seek final adjudication of their applications; not a specific outcome. If Plaintiffs are granted a visa, their injury will be redressed. If Plaintiffs are finally denied at any of the intermediary steps, although it is not their desired outcome, their injury—the lack of adjudication—also will be redressed."). Thus, Mr. Gundas's injury—unreasonable delay of his visa application—would be redressed by a decision regardless of the outcome. The Court finds that standing exists here. Mr. Gundas thus satisfies the constitutional requirements for standing.

### B. Consular Non-Reviewability

The Government next argues that the doctrine of consular non-reviewability bars Mr. Gundas's claims. *See* Defs.' Mot. at 13–17. As its name suggests, the consular non-reviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999) ("[C]onsular visa determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*,

338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien"). The Government acknowledges that there are "two narrow exceptions" to this general prohibition, Defs.' Mot. at 14 (quoting *Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023)), but argues that neither exception applies to Mr. Gundas's claim because a "straightforward application of the consular non-reviewability doctrine" precludes his claims, *id.* at 16. More plainly, the Government claims that Mr. Gundas's visa refusal under INA Section 221(g) was final, and thus, that decision is not reviewable by the Court. *See id.* at 17.

As previously mentioned, and as the Government notes, there has been debate "as to whether the doctrine applie[s] in cases seeking to compel action on visa applications in post-refusal administrative processes." *Id.* at 15; *see supra* Section IV.B. More specifically, this debate "hinged on whether a refusal under INA Section 221(g) was final or not." Defs.' Mot. at 15 (citing *Janay v. Blinken*, No. 23-cv-3737, 2024 WL 3432379, at *8 (D.D.C. July 16, 2024)). Courts have consistently held that where a visa "application is still undergoing administrative processing," the State Department's "decision is not final" "even where a refusal has been relayed." *See Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (concluding that the doctrine of consular non-reviewability did not apply to review of application in "administrative processing" after section 221(g) "refusal"); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020) (same). However, the Government argues that two recent cases, *Department of State v. Muñoz*, 602 U.S. 899 (2024), and *Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024), cast doubt on that approach. *See* Defs.' Mot. at 13–15.

In *Muñoz*, the Supreme Court reiterated that "the United States can . . . forbid aliens . . . from coming within its borders, and no limits can be put by the courts upon that power." 602 U.S. at 915 (cleaned up) (quoting *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)). However, *Muñoz* involved a visa application denied on appeal by the State Department, not an application that remained in administrative processing after a consular official's initial refusal. *See id.* at 906. At least one court in this district has held that *Muñoz* has no effect on the reviewability of visa applications subject to ongoing administrative processing. *See Janay*, 2024 WL 3432379, at *8.[1]

The Circuit's recent unpublished decision in *Karimova* strongly suggests that the consular non-reviewability doctrine prevents review of claims like Mr. Gundas's. *See* 2024 WL 3517852. In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been "officially refused." *Id.* at *2. That is so even if the consular officer simultaneously chooses to place the application in administrative processing: a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate the applicant's case." *Id.* Applied here, *Karimova* thus suggests that once "[a] consular officer reviewed [Mr. Gundas's] application, interviewed [him], and ruled that no visa would be granted," Mr. Gundas's visa application was "officially refused" notwithstanding its later placement in administrative processing. *Id.* at *4. Thus, the Government argues, the

---

[1] The plaintiff in *Janay*, like Plaintiff here, was placed in "administrative processing" and filed a complaint to have his application adjudicated without "further unreasonable delay." *Janay*, 2024 WL 3432379, at *1–2. The plaintiff in *Janay* did not "ask to look behind the consular officer's discretion to grant or deny Plaintiff['s] visa application" like the plaintiff in *Muñoz*. *Id.* at *8. Instead, he "merely [sought] a decision—one way or the other." *Id.* The court in *Janay* found that "*Muñoz* does not speak to the Court's authority to grant that relief" and that there was a "plausible basis to conclude that the consular officer ha[d] yet to decide whether to grant or to deny [the plaintiff's] visa application," so the decision was non-final. *Id.* at. *8–9.

consular officer's decision to withhold issuing Mr. Gundas a visa is an "official refusal," and the doctrine of consular non-reviewability precludes his claims.  *See* Defs.' Mot. at 16.

This Court acknowledged *Karimova* in its recent decision in *Asadi v. U.S. Dep't of State*, No. 23-cv-1953, 2024 WL 3835409 (D.D.C. Aug. 15, 2024).  There, the same question arose as to whether "the consular officer's refusal of [p]laintiff's visa application *was* a final decision." *Asadi*, 2024 WL 3835409, at *4.  This Court, in *Asadi*, found that it did not need to "conclusively determine" the extent to which *Karimova* disrupted prior decisions in similar cases because the plaintiff's claims failed on their merits.  *See id.* (citing *Karimova* and declining to "decide whether th[e] principle of [consular] non-reviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision").  Similarly, the Court finds here that it does not need to determine the extent to which *Karimova* disrupts prior decisions rejecting the Government's reliance on the consular non-reviewability doctrine, *see id.*, as Mr. Gundas's claims fail on their merits.

### C.  Clear and Non-Discretionary Duty

The Government's third argument is that Mr. Gundas's claims are not reviewable because he has not identified a "a clear, non-discretionary duty requiring a consular officer to adjudicate, let alone re-adjudicate, any specific visa application."  Defs.' Mot. at 17.  To show entitlement to a writ of mandamus, the Government states that Mr. Gundas must demonstrate "a clear and indisputable right to relief," that the Government or consular officer violated a "clear duty to act," and that there is "no adequate alternative remedy."  *Id.* at 18 (citing *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).  By a similar token, the Government states that "to bring a claim of unreasonable delay under the APA, the central question . . . is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *Id.* (quoting *In re Core*

*Commc'ns, Inc.,* 531 F.3d 849, 855 (D.C. Cir. 2008)).  These claims "can proceed only where a plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required* to take." *Id*.  (quoting *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004)).  As the Government seems to suggest, there is a common theme under both claims that Mr. Gundas must meet.  *See id.*  "To proceed under either the APA or the Mandamus Act based on a claim of "an agency's unreasonable delay . . . a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Asadi*, 2024 WL 3835409, at *5 (citing *Arabzada*, 2024 WL 1175802, at *11); *see also Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (stating that "standards for obtaining relief" under the Mandamus Act and the APA "are essentially the same"); *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

 Here, the Government claims that there is no law, regulation, or congressional intent for Mr. Gundas to point to that would provide him with a "clear duty" to adjudicate, or re-adjudicate, his visa application.  *See* Defs.' Mot. at 19–26.  This includes 5 U.S.C. § 555(b), which Mr. Gundas relies on, *see* Am. Compl. ¶ 36, as it "imposes no such clear duty," Defs.' Mot. at 19.  To support this, the Government again cites to *Karimova*, stating that the D.C. Circuit ruled that the Government had "no clear, non-discretionary duty, under 5 U.S.C. § 555(b) or elsewhere, to further process or adjudicate a visa application once it ha[d] been refused by a consular officer under Section 221(g)."  Defs.' Mot. at 19.  There, the Government notes that "[t]he court examined the statutory and regulatory commands applicable to consular visa processing to assess whether the State Department had a clear duty to act on a visa application

after a consular officer had refused it," and "[i]t found none." *Id*. at 20.  In his opposition, Mr. Gundas argues that this Court should not rely on *Karimova* because it "is neither controlling nor persuasive."  Pl.'s Am. Opp'n at 15.  He bases this argument on his claim that *Karimova* is not a "precedential decision," and the holding is "inapplicable to cases involving non-immigrant visa denials such as the instant one."  *Id*. at 15–16.  Mr. Gundas also points to several cases in this Circuit where courts have held that the Government is "under a non-discretionary duty to adjudicate a visa application."  Pl.'s Am. Opp'n at 13 (citing to *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)).  More specifically, Mr. Gundas largely relies on *Afghan & Iraqi Allies v. Blinken* to emphasize that "review of delayed visa[ ] applications (and not just the delayed visa applications at issue) [is] permissible under the APA."  Pl.'s Am. Opp'n at 15.

Here, the Court will assume without deciding that Mr. Gundas's complaint identifies a clear, non-discretionary duty.  Mr. Gundas largely relies on § 555(b) of the APA as the source of such duty.  *See* Am. Compl. ¶ 36.  However, the Court need not scour Mr. Gundas's complaint and opposition briefing to determine whether he has satisfied the requirement to identify a clear, non-discretionary duty at all, as his claims fail on the merits for the reasons discussed below.

**D.  Unreasonable Delay**

Finally, the Court turns to the Government's argument that Mr. Gundas's complaint fails to state a plausible claim of unreasonable delay.  *See* Defs.' Mot. at 27–35.  Simply put, the Government contends that Mr. Gundas fails to state a plausible claim because the delay here—roughly eighteen months— "is not unreasonable as a matter of law."  *Id*. at 28.

Mr. Gundas's claim of unreasonable delay is governed by the APA which, among other things, requires an agency to "proceed to conclude a matter presented to it" in a "reasonable

time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). "The 'central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, 725 F. Supp. 3d 20, 29 (D.D.C. 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d at 855). Courts in this circuit consider six factors (the so-called "*TRAC* factors") when evaluating unreasonable-delay claims:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton,* 336 F.3d 1094, 1102 (D.C. Cir. 2003). Courts use the *TRAC* factors to assess claims of unreasonable delay under both the Mandamus Act and the APA. *See S. Utah Wilderness All.,* 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Applying the *TRAC* factors to the present case, the Court finds that Mr. Gundas's complaint fails to state a plausible claim of unreasonable agency delay.

1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in the Government's favor.  Generally, the first

*TRAC* factor is the "most important" and carries the most weight.  *See In re Core Commc'ns,* 531

F.3d at 855.  Courts typically consider the first and second factors together, however, as both

analyze whether there is "sufficient rhyme and reason to explain the [g]overnment's response

time."  *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up); *see also*

*Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

Here, Mr. Gundas's visa application has been delayed for approximately eighteen

months.[2]  "[N]o statutory or regulatory timeline exists within which the State Department or a

consular office must re-adjudicate visa applications."  *Barazandeh v. U.S. Dep't of State*, No. 23-

cv-1581, 2024 WL 341166, at *8 (D.D.C. Jan. 30, 2024) (quoting *Isse v. Whitman,* No. 22-cv-

3114, 2023 WL 4174357, at *7 (D.D.C. June 26, 2023)).  That being so, the Court "turn[s] to

case law as a guide' to determine the reasonableness" of Defendants' delay in processing Mr.

Gundas's visa application.  *See Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5

---

[2] Courts calculate delays in visa processing using the period between "the last
[g]overnment action" and the issuance of the opinion. *See, e.g.*, *Brzezinski v. U.S. Dep't of
Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021)
(analyzing a seventeen-month delay between "the last [g]overnment action" and the opinion's
issuance); *Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022)
(analyzing a twenty-two-month delay between NVC's last action and the opinion's issuance).
The last government action in this case is unclear, as Mr. Gundas alleges that he received the
initial notice that a visa could not be issued and was undergoing further administrative
processing in June 2023, *see* Am. Compl. ¶ 41, Pl.'s Am. Opp'n at 3, but also received a letter
from the U.S. Consulate General in Erbil, Iraq on May 20, 2024, stating that Mr. Gundas's visa
application was being denied and additional security screening was being conducted, *see* Am.
Compl. ¶ 26.  For consistency purposes, the Court will use the first notice in June 2023,
following Mr. Gundas's interview, to calculate the period of delay.  Therefore, the period the
Court will use to analyze the delay in the instant case is the roughly eighteen-month span
between the consular officer's refusal and the issuance of this Opinion.

(D.D.C. Feb. 12, 2024) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id*. (quoting *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable. *See Barazandeh*, 2024 WL 341166, at *8 (collecting cases). And indeed, recently, the D.C. Circuit found that a delay of four-and-one-half years was not unreasonable. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 342 (D.C. Cir. 2023). Here, given the circumstances, Mr. Gundas's delay of approximately eighteen months is not unreasonable.

### 2. *TRAC* Factor 4

The fourth *TRAC* factor carries substantial weight. *See Da Costa*, 80 F.4th at 340, 343. The fourth factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." *Id*. at 343 (quoting *TRAC*, 750 F.2d at 80). Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). In fact, the D.C. Circuit "has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100) (alterations and quotations omitted).

The Circuit's recent decision in *Da Costa* aptly illustrates these principles.  There, the plaintiffs sought an order compelling USCIS to adjudicate their visa applications within fourteen days, to process any additional requested information within seven days, and to forward any approved applications to the NVC for processing within three days.  *See Da Costa*, 80 F.4th at 344.  In finding that the fourth *TRAC* factor weighed against the plaintiffs, the Circuit explained that the relief the plaintiffs sought was, at bottom, an order that would move their visa petitions "ahead of longer-pending petitions."  *Id*. at 343.  The court looked unfavorably on such a request in large part because "moving [the] [p]laintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog."  *Id*.  The court also emphasized that, although "judicial intervention could assist [the plaintiffs], it would likely impose offsetting burdens on equally worthy" applicants that were "equally wronged by the agency's delay."  *Id*. at 344 (quoting *In re Barr Lab'ys*, 930 F.2d at 73).  The judges concluded, therefore, that "the effect that [the plaintiffs'] requested relief would have on the queue of petitioners waiting ahead of the [p]laintiffs, weighs against judicial intervention to expedite adjudication of [p]laintiffs' petitions."  *Id*.

The same is true here.  While Mr. Gundas may not be seeking "to be prioritized ahead of any other applications" and is "merely asking for his visa application to be adjudicated," Am. Compl. ¶ 43, compelling agency action on Mr. Gundas's visa application would "impose offsetting burdens on equally worthy" applicants by effectively putting Mr. Gundas "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain."  *In re Barr Lab'ys*, 930 F.2d at 73, 75.  Mr. Gundas further argues that "this *TRAC* factor cannot be decided without discovery," as it is unclear the order or manner in which similar cases are adjudicated, *see* Pl.'s Am. Opp'n at 20, but this claim does not grapple with the fact that granting

Mr. Gundas's requested relief would "necessarily come at the expense of" applicants who, like Mr. Gundas, have likely also been waiting for months or years for their visas to be adjudicated. *See Da Costa*, 80 F.4th at 344 (internal quotation marks omitted) (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).  Moreover, granting Mr. Gundas his requested relief would require the State Department to "reorder[ ] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way."  *In re Barr Lab'ys*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id.*  For all of these reasons, the Court finds that the fourth *TRAC* factor weighs in the Government's favor.

### 3.  *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors also tilt in the Government's favor.  These factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay.  *See TRAC*, 750 F.2d at 80.  On this front, Mr. Gundas alleges that the harm of delay in adjudicating his application is "immense" as he faces the risk of losing his teaching position, the "time, effort and money" spent would go to waste if the underlying petition expires, and it would make it more difficult for his family to plan for their children's education.  Am. Comp. ¶¶ 42, 44, 46; Pl.'s Am. Opp'n at 20–21.

Although the Court is sympathetic to Mr. Gundas and his family's situation, it agrees with the Government that his "position is not unique."  *See* Defs.' Mot. at 34.  Seeking employment-based admission to the United States necessarily entails some amount of career, economic, and educational uncertainty.  Unlike in some other cases where prolonged family separation or underlying health concerns tied specifically to the delay at issue drove courts to find that *TRAC* factors three and five weighed in plaintiffs' favor, the Gundas family lives

together in Iraq and does not face separation or injury to health because of further delay.  *See, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding the third and fifth *TRAC* factors weighed in favor of the plaintiffs considering prolonged separation of spouses); *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *7 (D.D.C. July 29, 2022) (similar); *Pourshakouri v. Pompeo,* 2021 WL 3552199, at *10 (D.D.C. Aug. 11, 2021) (finding third and fifth factors weighed in favor of 83-year-old plaintiff living alone and separated indefinitely from children and grandchildren).  The Court thus finds that the harms Mr. Gundas alleges are insufficient to tip the scales in his favor and, instead, that the third and fifth *TRAC* factors tilt at least slightly towards the Government.

### 4.  *TRAC* Factor 6

The sixth *TRAC* factor, on the other hand, does not weigh in either party's favor.  This factor requires courts to "determine whether the agency has acted in bad faith in delaying action."  *Gona v. U.S. Citizenship & Immigr. Servs.,* No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).  Mr. Gundas alleges that "to the extent intentional delay can be considered bad faith," he has "more than adequately alleged it."  Pl.'s Am. Opp'n at 21.  Mr. Gundas further argues that the Government's failure to adjudicate his current and previous visas is a "deliberate and repeated singling out of [Mr. Gundas] for indefinite delay, at the risk of frustrating his job opportunity."  *Id*. at 22.

The Court finds that Mr. Gundas ultimately alleges no facts amounting to bad faith.  That said, "the lack of plausible allegations of impropriety does not weigh against [Mr. Gundas], and therefore does not alter the Court's analysis."  *See Fakhimi v. Dep't of State,* No. 23-cv-1127, 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023); *see also Da Costa*, 80 F.4th at 345–46 (finding the sixth *TRAC* factor "neutral" where plaintiffs' allegations of bad faith were

"conclusory and implausible"); *Palakuru v. Renaud,* 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (considering the sixth *TRAC* factor "neutral" even though plaintiff alleged that the government had engaged in "purposeful[ ] delay" and "artificially inflate[d] . . . processing times").

### 5.  Weighing the *TRAC* Factors

Taking all six *TRAC* factors together, the Court concludes that Mr. Gundas has not stated a claim for unreasonable delay under the Mandamus Act or the APA.  The relatively minimal eighteen-month delay, prior case law, and the fact that granting Mr. Gundas the relief he seeks would come at the expense of other similarly situated applicants that have waited as long (if not longer) for their applications to be adjudicated all contribute to the conclusion that the delay Mr. Gundas has experienced has not been unreasonable.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 10, 2024                                RUDOLPH CONTRERAS
                                                         United States District Judge